IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE PAINE COLLEGE,

    Plaintiff,

       v.

THE SOUTHERN ASSOCIATION OF
COLLEGES AND SCHOOLS
COMMISSION ON COLLEGES, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:16-CV-3503-TWT

## OPINION AND ORDER

This action arises out of Paine College's loss of accreditation. It is before the Court on the Defendant The Southern Association of Colleges and Schools Commission on Colleges, Inc.'s Motion for Summary Judgment [Doc. 70] and the Plaintiff The Paine College's Motion for Partial Summary Judgment [Doc. 71]. For the reasons set forth below, the Defendant The Southern Association of Colleges and Schools Commission on Colleges, Inc.'s Motion for Summary Judgment [Doc. 70] is GRANTED, and the Plaintiff The Paine College's Motion for Partial Summary Judgment [Doc. 71] is DENIED.

# I. Background

The Plaintiff The Paine College is a private, co-educational, liberal arts college located in Augusta, Georgia.[1] Paine College is a historically black college whose predecessor, the Paine Institute, was established in 1882.[2] It is now one of the oldest historically black colleges and universities in the country.[3] The Defendant The Southern Association of Colleges and Schools Commission on Colleges, Inc. (the "Southern Association") is a private, nonprofit, voluntary accrediting organization that was founded in Atlanta, Georgia in 1895.[4] The Southern Association accredits approximately 800 higher education institutions, including a number of historically black colleges and universities.[5] Paine College was first accredited by a predecessor of the Southern Association in 1931, and has been continuously accredited since then.[6]

The Southern Association's membership is composed of public and non-public degree-granting institutions of higher education. Its day-to-day

---

[1]  Def.'s Statement of Material Facts ¶ 1 [Doc. 70-2].

[2]  Pl.'s Statement of Material Facts ¶ 1 [Doc. 71-2].

[3]  *Id.* ¶ 4.

[4]  Def.'s Statement of Material Facts ¶ 2.

[5]  *Id.* ¶ 3.

[6]  *Id.* ¶ 4. Paine's accreditation has remained in place since September 19, 2016 pursuant to this Court's Consent Order. *See* [Doc. 5].

operations are handled by a staff of approximately 40 individuals.[7] Each Southern Association member institution is allowed to designate one voting member to the Southern Association College Delegate Assembly. The College Delegate Assembly elects 77 members to serve on the Southern Association Board of Trustees.[8] The Board of Trustees includes 66 representatives from member institutions, along with 11 public representatives who are not employed by a member institution.[9] These 11 public representatives come from each state in the Southern Association's geographic region.[10] The Board of Trustees is responsible for guiding the organization's work and implementing the accreditation process.[11]

The Southern Association Executive Council is a subset of the Board of Trustees.[12] It consists of the Board Chair, a public member, and a representative from each of the 11 southern states in the Southern Association's geographic region.[13] The Executive Council has a number of responsibilities, including reviewing and approving recommendations from the Committee on Compliance

---

[7]     Def.'s Statement of Material Facts ¶ 5.

[8]     *Id.* ¶ 7.

[9]     *Id.* ¶ 8.

[10]     *Id.*

[11]     *Id.* ¶ 9.

[12]     *Id.* ¶ 10.

[13]     *Id.*

and Reports (the "C&R Committee") prior to the submission of those reports to the full Board of Trustees.[14] The primary responsibility of C&R Committees is to review and recommend action on the accreditation status of member institutions.[15] These recommendations are then reviewed and approved by the Executive Council, and then voted on by the full Board of Trustees.[16] Every Board of Trustees member, other than those members serving on the Executive Council, is assigned to a C&R Committee. Each C&R Committee can contain approximately ten to fifteen Board members.[17] This means that there are several different C&R Committees each year.[18] Every year, each of the institutions that are either applying for accreditation, up for reaffirmation of accreditation, seeking approval of a substantive change, under review, or have been placed on sanctions are divided among the C&R Committees prior to action by the full Board.[19]

The Southern Association bases its accreditation decisions on requirements provided in the *Principles of Accreditation: Foundations for*

---

[14]     *Id.* ¶ 11.

[15]     *Id.* ¶ 14.

[16]     *Id.*

[17]     *Id.* ¶ 13.

[18]     *Id.*

[19]     *Id.* ¶ 15.

*Quality Enhancement* (the "Principles").[20] Members are required to remain in compliance with the Principles at every stage of institutional evaluation to be accredited by the Southern Association, or face sanctions.[21] These stages of institutional evaluation include the initial application stage, the reaffirmation stage, the substantive change stage, or an evaluation triggered by the receipt of a complaint or unsolicited information.[22] The Principles consist of "Core Requirements," "Comprehensive Standards," and "Federal Requirements."[23] The Core Requirements are basic, broad, foundational requirements that an institution must meet to be accredited.[24] The Comprehensive Standards, in turn, provide requirements in four specific areas: (1) institutional mission, governance, and effectiveness, (2) programs, (3) resources, and (4) institutional responsibility for the Southern Association policies.[25] The Comprehensive Standards are more specific to the operations of the institutions and represent good practices in higher education.[26] Under the Principles, institutions must demonstrate compliance with both the Core Requirements and the

---

[20]    *Id.* ¶ 36.

[21]    *Id.* ¶ 37.

[22]    *Id.*

[23]    *Id.* ¶ 38.

[24]    *Id.* ¶ 39.

[25]    *Id.* ¶ 41.

[26]    *Id.* ¶ 42.

Comprehensive Standards.[27] Compliance with just the Core Requirements is not enough to warrant accreditation or reaffirmation of accreditation, and if an institution is judged to be significantly out of compliance with any of the Comprehensive Standards, the Board of Trustees can deny reaffirmation and place the institution on sanction.[28] Finally, with the Federal Requirements, the Southern Association reviews an institution with criteria outlined in federal regulations promulgated by the U.S. Department of Education. The Principles require an institution to document compliance with the Federal Requirements.[29]

Paine College's membership in the Southern Association was last reaffirmed in July 2011.[30] In April 2012, the *Augusta Chronicle* published articles detailing financial mismanagement at Paine.[31] These articles explained that Paine lost its eligibility for a student federal loan program, that Paine had not returned unused federal financial aid for students who had withdrawn from the school, that numerous financial aid checks to students bounced, and that Paine lacked adequate policies and procedures to administer its Federal Perkins

---

[27]     *Id.* ¶¶ 40, 43.

[28]     *Id.* ¶¶ 20, 40.

[29]     *Id.* ¶ 46.

[30]     *Id.* ¶ 47.

[31]     *Id.* ¶ 51.

Loan Program.[32] These details were based upon a review of Paine's audited financial statements from the year ending June 30, 2011.[33] The *Augusta Chronicle* continued to publish articles describing a bleak financial situation at Paine.[34]

The Southern Association became aware of these articles, and pursuant to its policy regarding unsolicited information, reviewed the information in the articles.[35] On April 24, 2012, the Southern Association requested that Paine respond to the allegations in the articles, including providing any documentation relevant to Paine's compliance with the Principles.[36] In May 2012, Paine submitted a written response to the Southern Association and provided documentation concerning Paine's financial condition.[37] After reviewing these submissions, the Southern Association Board of Trustees determined that the articles' allegations were significantly documented.[38] It concluded that Paine failed to comply with six of the Principles relating to financial stability and management, including: (1) Core Requirement 2.11.1, Financial Resources; (2)

---

[32]  *Id.* ¶ 53.

[33]  *Id.* ¶ 52.

[34]  *Id.* ¶¶ 54-56.

[35]  *Id.* ¶¶ 51, 57.

[36]  *Id.* ¶ 57.

[37]  *Id.* ¶ 58.

[38]  *Id.* ¶ 59.

Comprehensive Standard 3.10.1, Financial Stability; (3) Comprehensive Standard 3.2.8, Qualified Administrative/Academic Officers; (4) Comprehensive Standard 3.10.3, Control of Finances; (5) Comprehensive Standard 3.10.4, Control of Sponsored Research/External Funds; and (6) Federal Requirement 4.7, Title IV Program Responsibilities.[39] Due to this non-compliance with the Principles, the Board of Trustees placed Paine on Warning status and appointed a Special Committee to visit the school in 2013 to reevaluate its compliance with the Principles.[40] The Southern Association also informed Paine that, pursuant to federal regulations and the Southern Association policy, it must demonstrate compliance with the Principles within four years, or face removal from membership.[41]

A Southern Association Special Committee visited Paine each year from 2013 to 2016.[42] After each visit, the Special Committee drafted a report and provided Paine with a copy of the report.[43] Under the Southern Association procedures, Paine could correct any factual errors in the Special Committee Report, and provide written responses and documentation addressing the issues

---

[39]     *Id.* ¶¶ 59-60.

[40]     *Id.* ¶ 61.

[41]     *Id.*

[42]     *Id.* ¶ 65.

[43]     *Id.* ¶ 66.

listed in the report.[44] Paine provided such a response each of these years and also submitted hundreds of pages of documentation concerning its compliance with the Principles.[45] The Special Committee Reports, Paine's responses and documentation, and staff memoranda were compiled and then submitted to the C&R Committee each year.[46] Each year the C&R Committee found that Paine failed to comply with the Principles.[47] And, each year, the Executive Council and Board of Trustees agreed with the C&R Committees and adopted their recommendations concerning the finding of noncompliance.[48] In 2013, the Board of Trustees continued Paine on Warning.[49] The Southern Association rules only allow an institution to be on Warning status for two years. In 2014 and 2015, the Board of Trustees found good cause to continue Paine on Probation.[50]

---

[44]     *Id.* ¶ 67.

[45]     *Id.* ¶ 68.

[46]     *Id.* ¶ 69.

[47]     *Id.* ¶ 72. Each of these years, the C&R Committee found that Paine failed to comply with a variety of different requirements of the Principles. *See id.* ¶ 73 (listing the Core Requirements, Comprehensive Standards, and Federal requirements that Paine was deemed to have been in noncompliance with during these years).

[48]     *Id.* ¶ 74.

[49]     *Id.* ¶ 75.

[50]     *Id.*

However, after the Special Committee's review of Paine in 2016, the Southern Association could no longer continue Paine on Probation.[51] The Southern Association rules only allow a member institution to be on Probation status for two years. The rules dictate that at this point the Board of Trustees either must determine that Paine was in compliance with the Principles, or remove Paine from membership.[52] Once again, a Special Committee visited Paine from March 29-31, 2016.[53] After the Special Committee submitted its report, the C&R Committee recommended a finding that Paine was not in compliance with the Principles.[54] The Board of Trustees determined that Paine failed to comply with three Principles: (1) Core Requirement 2.11.1 (Financial Resources); (2) Comprehensive Standard 3.10.1 (Financial Stability); and Comprehensive Standard 3.10.4 (Control of Sponsored Research/External Funds).[55] Since Paine could no longer be continued on Probation, the Executive Council and the Board of Trustees unanimously voted to remove Paine from membership.[56]

---

[51] *Id.* ¶ 76.

[52] *Id.*

[53] *Id.* ¶ 78.

[54] *Id.* ¶¶ 80, 82, 84.

[55] *Id.* ¶ 83.

[56] *Id.*

On July 7, 2016, Paine formally appealed the Board of Trustees's decision revoking Paine's accreditation.[57] The Southern Association rules allow an institution that has been removed from membership to appeal that decision.[58] These appeals are governed by the *Appeals Procedures of the College Delegate Assembly* (the "Appeals Procedures").[59] Generally, institutions may not submit new evidence on appeal.[60] However, when an institution has been removed for financial reasons, the Appeals Procedures allow an institution to submit "new and verifiable" financial information as a part of its brief.[61] The Appeals Committee consists of 12 individuals elected by the College Delegate Assembly.[62] These individuals must have previously served on the Board of Trustees.[63] The Appeals Procedures provide that an appeal can be decided by a quorum of five or more members of the Appeals Committee.[64] The Chair of the Board of Trustees must fill vacancies – for example, if a member has a conflict of interest

---

[57]   *Id.* ¶ 85.

[58]   *Id.* ¶ 28.

[59]   *Id.*

[60]   *Id.* ¶ 29.

[61]   *Id.*

[62]   *Id.* ¶ 30.

[63]   *Id.*

[64]   *Id.* ¶ 31.

– on the Appeals Committee when it is necessary to obtain a quorum.[65] The Appeals Procedures provide that appeals hearings for actions taken in June are to be held in the third week of August, with the institution's brief due at least 14 days in advance.[66] The Appeals Procedures provide only two grounds for appealing a decision of the Board. First, the Appeals Committee can overturn the Board's decision to remove an institution from membership if it determines that the decision was arbitrary, that is, was unreasonable and not based on, or consistent with, the Principles or other policies of the Southern Association.[67] Second, the Appeals Committee can remand if the Board failed to follow its procedures and that this failure was significant in leading to the decision.[68]

Pursuant to the Appeals Procedures, the appeals hearing for Paine was set for the third week of August, with the brief due two weeks before that.[69] However, Paine requested that the hearing be postponed to the week of September 12, 2016.[70] The Southern Association granted this request.[71] The Southern Association also extended the due date for Paine's brief to August 8,

---

[65]    *Id.* ¶ 32.

[66]    *Id.* ¶ 33.

[67]    *Id.*

[68]    *Id.*

[69]    *Id.* ¶ 103.

[70]    *Id.* ¶ 104.

[71]    *Id.*

2016, although Paine did not specifically request an extension of the briefing deadline.[72] The Southern Association appointed Cynthia Escamilla, the Vice President and General Counsel at the University of the Incarnate Word, as the Hearing Officer for this appeal.[73] On September 12, 2016, the appeals hearing was conducted.[74] The Appeals Committee ultimately affirmed the decision of the Board of Trustees revoking Paine's accreditation.[75]

On September 19, 2016, Paine filed this lawsuit. In its First Amended Verified Complaint, Paine asserts claims for: Violation of Common Law Due Process (Failure to Provide Fair Adjudicative Process); Violation of Common Law Due Process (the Southern Association's Procedures are Arbitrary and Unreasonable); Violation of Common Law Due Process (the Southern Association's Decision was Unsupported by Substantial Evidence); Breach of Contract; Violation of the Higher Education Act of 1965, Declaratory Relief as to Attorneys' Fees; and Violation of the Georgia Non-Profit Corporation Code. Now, Paine moves for partial summary judgment, and the Southern Association moves for summary judgment.

---

[72]     *Id.* ¶ 105.

[73]     *Id.* ¶ 108.

[74]     *Id.* ¶ 119.

[75]     *Id.* ¶ 122.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[76] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[77] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[78] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[79] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[80]

## III. Discussion

### A. Higher Education Act

First, the Southern Association moves for summary judgment as to Count IV, Paine's claim under the Higher Education Act of 1965 (the "Higher

---

[76]    FED. R. CIV. P. 56(a).

[77]    *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[78]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[79]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[80]    *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

Education Act"). In Count V of the First Amended Verified Complaint (the "Complaint"), Paine argues that the Southern Association violated various provisions of the Higher Education Act. The Southern Association argues that this claim fails as a matter of law because there is no private right of action under the Higher Education Act. The Court agrees. The Eleventh Circuit has stated that it is "well-established precedent" that there is no implied private right of action under the Higher Education Act.[81] In *McCulloch v. PNC Bank Inc.*, the Eleventh Circuit, concluding that a private cause of action does not exist under the Higher Education Act, noted that "every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions."[82] Paine acknowledges this precedent. Instead, Paine argues that, although no private right of action previously existed under the Higher Education Act, Congress's amendments to the Higher Education Act in 2008 created a private right of action.[83] According to Paine, Congress amended the Higher Education Act in response to the Eleventh Circuit's decision in *Hiwassee College* with the intention of creating a private right of action.[84]

---

[81] *Hiwassee Coll., Inc. v. S. Ass'n of Colls. & Schs.*, 531 F.3d 1333, 1335 (11th Cir. 2008).

[82] *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002).

[83] Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 4-9.

[84] *Id.*

However, the Court concludes that no private right of action exists under the Higher Education Act, even despite these amendments. The Eleventh Circuit, along with numerous other courts, has consistently held over the course of many years that the Higher Education Act provides no private right of action.[85] The amendments cited by Paine do nothing to change the reasoning that led these courts to conclude that there is no private right of action. In *Hiwassee College*, the Eleventh Circuit rejected the plaintiff's claims under the Higher Education Act, noting that "even if the party seeking a private right of action under the HEA was deemed to be of a class that the HEA was intended to protect, the second and most important prong of the *Cort v. Ash* analysis would still bar the finding of an implied private right of action."[86] This inquiry asks whether there is any indication of Congress's intent to create a private right of action.[87]

Importantly, nothing in the amendments to the Higher Education Act indicates that Congress intended to create a private right of action. Paine has not highlighted any explicit or implicit indication that Congress had such an intent. This factor, which the Eleventh Circuit previously noted was the most

---

[85]     *See Hiwassee College, Inc.*, 531 F.3d at 1335; *McCulloch*, 298 F.3d at 1220-25.

[86]     *Hiwassee College*, 531 F.3d at 1335 n.2 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)) (internal citations omitted).

[87]     *See McCulloch*, 298 F.3d at 1222.

determinative factor in rejecting claims under the Higher Education Act, weighs strongly against recognizing a private cause of action in these amendments. Paine must show that there was some indication that Congress intended to create a cause of action. Instead, all Paine can show is that Congress intended to strengthen procedural safeguards for institutions undergoing accreditation review. Even if the amendments to the Higher Education Act intended to provide these additional safeguards for institutions, as Paine emphasizes, this does not mean that Congress also intended to create a private right of action. These are two separate questions. Instead, this only means that Congress intended for the Higher Education Act to provide additional protection to institutions such as Paine. That a law provides additional protections for a class of persons is not enough to establish a private right of action for that protected class.[88]

This conclusion is further buttressed by the fact that the Eleventh Circuit has come to the same conclusion in a decision issued after these amendments. In 2013, nearly five years after these amendments to the Higher Education Act, the Eleventh Circuit once again noted that it is "well-settled" that the Higher Education Act does not provide an express, nor implied, private right of action.[89]

---

[88]    *Hiwassee College*, 531 F.3d at 1335 n.2 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)) (internal citations omitted).

[89]    *Bennett v. Premiere Credit of N. Am., LLC*, 504 F. App'x 872, 875 (11th Cir. 2013).

This further reinforces the Court's conclusion that the amendments to the Higher Education Act did not alter this settled law. In fact, Paine fails to cite a single case recognizing that these amendments created a private right of action under the Higher Education Act.[90]

The only argument that Paine makes as to Congress's intent to create a private action is the timing of the amendments. Paine insists that the timing of the amendment indicates that Congress intended to overturn the *Hiwassee* decision.[91] However, the Court finds this argument unpersuasive. As the Southern Association points out, the Higher Education Opportunity Act, which amended the Higher Education Act, was first introduced in November 2007.[92] The Eleventh Circuit's decision in *Hiwassee College* was published on April 14, 2008. Furthermore, even if these amendments occurred after the decision in *Hiwassee College*, that does not mean that they are *in response* to that decision. It is entirely speculative to assume that these amendments were passed in

_____

[90]    Paine cites *Escuela de Medicina San Juan Bautista, Inc. v. Liaison Comm. on Med. Educ.*, 820 F. Supp. 2d 317 (D.P.R. 2011). However, the court in that case did not recognize a private right of action under the Higher Education Act. Instead, the court considered the Higher Education Opportunity Act's effect on common law due process claims, and distinguished *Hiwassee College* since it was decided prior to the passage of these amendments. *Id.* at 319-20. Thus, while this case may arguably have bearing on Paine's common law due process claims, it does not support the proposition that these 2008 amendments created a private right of action.

[91]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 4.

[92]    *See* Higher Education Opportunity Act, H.R. 4137, 110th Cong. (1st Sess. 2007).

response to that decision. This is especially true given that nothing in the text of the statute indicates Congress's intent to invalidate *Hiwassee College*. Therefore, the Court finds this argument unpersuasive.

## B. Common Law Due Process

Next, both parties move for summary judgment as to Paine's various claims for violation of common law due process. The Southern Association moves for summary judgment as to all of Paine's claims, and Paine moves for summary judgment as to its claim that the Southern Association's failure to adhere to its own rules deprived Paine of due process. Courts have recognized that "quasi-public" professional organizations and accrediting agencies such as the Southern Association have a common law duty to use fair procedures when making decisions affecting their members.[93] "Courts developed the right to common law due process as a check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing."[94] The federal government does not itself directly accredit institutions of higher education.[95] Instead, the Secretary of Education approves accrediting organizations, and these bodies set their own standards for accreditation.[96]

---

[93]    *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 711 (6th Cir. 2006).

[94]    *Id.* at 712.

[95]    *Id.* at 707.

[96]    *Id.*

Accrediting agencies such as the Southern Association act on behalf of the Secretary of Education and wield "the quasi-governmental power of deciding which [institutions] are eligible for federal funds."[97] Thus, courts review the decisions of these accrediting organizations for violations of fundamental due process rights.

The scope of review, however, is limited. The court "reviews only whether the decision of an accrediting agency such as [Southern Association] is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence."[98] Common law due process claims such as these are often analyzed with reference to administrative law.[99] The essential elements of due process are notice, an opportunity to respond, and an open and fair deliberative process.[100] Additionally, the failure of an accrediting agency such as the Southern Association to follow its own rules, as well as a conflict of interest, would deny an institution due process.[101] However, although principles of federal administrative law guide the court's analysis, judicial review of accreditation decisions is more limited than review of administrative agency decisions under

---

[97]     *Id.* at 712.

[98]     *Id.* at 712.

[99]     *Hiwassee College Inc. v. S. Ass'n of Colls. & Schs., Inc.*, No. 1:05-CV-0951-JOF, 2007 WL 433098, at *4 (N.D. Ga. Feb. 5, 2007).

[100]     *Id.*

[101]     *Id.*

the APA.[102] "Courts have made the policy decision to ensure that these organizations act in the public interest and do not abuse their power, but judicial review is limited to protecting the public interest."[103] Courts afford accrediting agencies great deference and focus primarily on whether the accrediting organization's rules provide a fair and impartial procedure and whether it followed its own rules.[104] The standard employed by courts analyzing due process claims "tends strongly to defer to accreditation decisions reached by accrediting organizations which institutions elect to join."[105]

The Court understands the significance of the issues at stake. The Defendant's decision to remove Paine from membership puts it "in a critical position and most likely would signal its demise in that at the very least federal financial aid is unavailable to unaccredited schools."[106] "An institution denied accreditation is likely to 'promptly [go] out of business—as very few people [are] willing [or able] to pay' tuition out of their own pockets."[107] Nonetheless, the

---

[102]  *See Thomas M. Cooley Law School*, 459 F.3d at 713.

[103]  *Id.*

[104]  *St. Andrews*, 679 F. Supp. 2d at 1328.

[105]  *Id.*

[106]  *Hiwassee College, Inc. v. S. Ass'n. of Colleges and Schools, Inc.*, CIV.A. 1:05-CV-0951-JOF, 2007 WL 433098, at *5 (N.D. Ga. Feb. 5, 2007).

[107]  *See Prof'l Massage Training Ctr., Inc. v. Accreditation Alliance of Career Schs. & Colls.*, 781 F.3d 161, 170 (4th Cir. 2015) (quoting *Chicago Sch. of Automatic Transmissions, Inc. v. Accreditation All. of Career Schs. & Colls.*,

Court's review of the Southern Association's decision to remove Paine from membership is limited in scope. As the court in *St. Andrews Presbyterian College* explained:

> The question is one of process: did the accreditation review process here violate any common law due process rights the College may have had because the product was an arbitrary, capricious or unreasonable accreditation decision that was not based on substantial evidence. The Court necessarily concludes the process was fundamentally fair and that the College was allowed to present sufficiently complete information about its financial condition and operations. That St. Andrews disagrees with SACS' conclusions and determination does not demonstrate that it was denied due process.[108]

Here, the Court finds that the review process was fundamentally fair and that Paine was allowed to submit sufficient information about its financial status so that the Southern Association could make an informed decision concerning Paine's accreditation. The Court addresses each of the parties' specific arguments below.

### 1. The Southern Association's Rules Themselves

First, the Southern Association moves for summary judgment as to Paine's claim that the Southern Association's rules and procedures themselves violate due process because they are inherently arbitrary and unreasonable.[109]

---

44 F.3d 447, 448 (7th Cir. 1994)).

[108] *St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs.*, 679 F. Supp. 2d 1320, 1331 (N.D. Ga. 2009).

[109] Def.'s Mot. for Summ. J., at 20.

In Count II of the Complaint, Paine alleges that it was denied due process because the Southern Association's procedures are arbitrary and unreasonable. "[T]here exists a 'common law duty on the part of 'quasi-public' private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members.'"[110] With this claim, Paine is not arguing that the Southern Association deviated from its procedures in a manner that resulted in due process violations, but instead that the rules themselves as they are written deprive Paine of due process.

The Court concludes that the Southern Association is entitled to summary judgment as to this claim. Both the Eleventh Circuit and courts in this District have held on multiple occasions that the Southern Association's adjudicative rules and procedures are fair and do not violate common law due process.[111] In its Complaint, Paine alleges a number of reasons why these rules are fundamentally unfair. Paine asserts many of the same arguments that were ultimately rejected in both *Hiwassee College* and *St. Andrews* concerning the

_____

[110]     *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 169 (4th Cir. 2015) (quoting *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 534-35 (3d Cir. 1994)).

[111]     *See, e.g.*, *Hiwassee Coll., Inc. v. S. Ass'n of Colls. & Schs.*, 531 F.3d 1333, 1335 ("The procedural components of Hiwassee's argument fail to show a violation of common law due process . . . ."); *St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, 679 F. Supp. 2d 1320, 1328 (N.D. Ga. 2009) ("Thus the Court finds the accreditation process and procedures provided by SACS here, as they were in *Hiwassee*, met the requirements of common law due process and the College's claim that they did not is unfounded.").

fairness of the rules themselves.[112] The procedures used by the Southern Association to remove Paine from accreditation here are the same as those applied to remove the institutions in both *Hiwassee College* and *St. Andrews*.[113] Paine has failed to show how the procedures utilized here are different from the procedures in those cases. Therefore, to the extent that these claims are indistinguishable from the claims in these prior cases, the Court finds that the Southern Association is entitled to summary judgment.[114]

However, in its brief, Paine highlights two arguments for why the Southern Association's rules violate common law due process that were not specifically addressed in *Hiwassee College* and *St. Andrews*. Paine first argues that the Appeals Procedures give the Appeals Committee "overly broad discretion to determine whether newly submitted financial information is 'material.'"[115] According to Paine, this rule is arbitrary and unreasonable

---

[112]    *See St. Andrews*, 679 F. Supp. 2d 1328 ("The Court begins its analysis by noting that St. Andrews asserts many of the same claims and violations asserted, and ultimately rejected, in *Hiwassee Coll. v. Southern Ass'n of Colleges and Schools . . . .*" (internal citations omitted)).

[113]    *Id.* ("It is significant that the procedures SACS used in removing St. Andrews' accreditation are identical to those applied by SACS in removing Hiwassee's accreditation, which both the district court and the Eleventh Circuit found met the requirements of 'common law due process,' to the extent such due process requirements exist in the accreditation process.").

[114]    *Id.* ("To the extent the College's claims are not otherwise factually or materially distinguishable from those asserted by Hiwassee, the Court rejects them here.").

[115]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 15.

because the Higher Education Act does not allow this kind of discretion.[116] However, Paine has failed to show that this rule violates due process. No portion of the cited Higher Education Act provisions precludes an accrediting agency from developing procedures for determining what financial information is material.[117] Moreover, Paine's purported rule would be nonsensical. If the Appeals Committee were not permitted to determine whether new financial information is material, then every appeal would have to be remanded because an institution could always submit new financial information (regardless of whether it contains important new information). An automatic, nondiscretionary rule such as this would force the Appeals Committee to send back every single case it reviews dealing with financial issues. Such a rule would defy logic. Thus, the Court finds this argument unpersuasive.

Paine next argues that the Appeals Procedures are arbitrary and unreasonable because they allow the Appeals Committee to reject new financial information that is not "verifiable."[118] According to Paine, this rule amounts to a "*per se* violation" of the Higher Education Act because the standard of

---

[116]    *Id.*

[117]    *See* 20 U.S.C. § 1099b(a)(6)(E). Furthermore, Paine fails to explain why inconsistency between the Southern Association's internal rules and the Higher Education Act renders those rules arbitrary and unreasonable.

[118]    Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 16.

"verifiable" is not included in the statute.[119] For this argument, Paine relies upon 20 U.S.C. § 1099b(a)(6)(E), which provides that an accrediting association's procedures should provide "one occasion [to] seek review of significant financial information that was unavailable to the institution or program prior to the determination of the adverse action, and that bears materially on the financial deficiencies identified by the agency or association."[120] However, nothing in this statute prevents an accrediting organization from establishing standards for the types of financial information that are allowed in an appeal. Despite Paine's insistence, the Southern Association's rule considering new "verifiable" financial information does not clearly contravene the requirements of the Higher Education Act.

Furthermore, this rule's purported inconsistency with the Higher Education Act does not mean that the Appeals Procedures violate due process. Paine has not cited any authority that a violation of the Higher Education Act constitutes a *per se* violation of common law due process. This is merely an attempt by Paine to shoe horn its rejected Higher Education Act claim into its common law due process claim. Moreover, a cursory reading of the cited provisions of the Higher Education Act supports the conclusion that they do not bear on whether a due process violation occurred. The Higher Education Act

---

[119]        *Id.*

[120]        20 U.S.C. § 1099b(a)(6)(E).

provisions cited by Paine provide criteria for the Secretary of Education to consider when reviewing an accrediting agency.[121] These are not absolute factors as to whether these organizations' rules provide due process. Therefore, the Court finds this argument unpersuasive.

Finally, even if this rule were arbitrary and unreasonable, Paine has not shown that it caused an injury. To succeed on a common law due process claim, Paine must show that the due process violation caused it some type of injury.[122] As will be discussed below in more detail, the Appeals Committee assumed that the information submitted was verifiable and still concluded that the Board's underlying decision should be upheld. Thus, even if the "verifiable" standard is arbitrary and unreasonable, it did not affect the ultimate outcome of Paine's appeal, and thus could not have deprived Paine of due process. For these reasons, the Southern Association is entitled to summary judgment as to Paine's claims that its rules and procedures violate common law due process.

---

[121] *See* 20 U.S.C. § 1099b(a) ("No accrediting agency or association may be determined by the Secretary to be a reliable authority as to the quality of education or training offered for the purposes of this chapter or for other Federal purposes, unless the agency or association meets criteria established by the Secretary pursuant to this section. The Secretary shall, after notice and opportunity for a hearing, establish criteria for such determinations.").

[122] *See, e.g.*, *St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, 679 F. Supp. 2d 1320, 1333 (N.D. Ga. 2009) ("St. Andrews has failed to show that the alleged conflict caused it any injury or otherwise affect the accreditation process.").

## 2. Substantial Evidence

Next, the Southern Association moves for summary judgment as to Paine's claim that the Southern Association's decision was not based on substantial evidence.[123] In Count III, Paine alleges that the Southern Association violated its common law due process rights because the Southern Association's decision was unsupported by substantial evidence. Courts, when determining whether a common law due process violation has occurred, "review 'only whether the decision of an accrediting agency such as [Southern Association] is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence.'"[124] "The Supreme Court has defined substantial evidence to be anything 'more than a mere scintilla' provided that a 'reasonable mind might accept [the evidence] as adequate to support a conclusion.'" Paine argues that, although "substantial evidence" is ordinarily a deferential standard, issues of fact exist in this case that preclude summary judgment.

However, the Court finds that no genuine dispute of material fact exists, and concludes that the Southern Association's decision was based upon

---

[123]     Def.'s Mot. for Summ. J., at 22.

[124]     *Hiwassee Coll., Inc. v. S. Ass'n of Colls. & Schs.*, 531 F.3d 1333, 1335 n.4 (11th Cir. 2008) (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 711, 712 (6th Cir. 2006)).

substantial evidence.[125] Ample evidence existed to support the decisions of the Board of Trustees and the Appeals Committee to revoke Paine's accreditation due to serious financial problems.[126] Paine does not dispute the existence of a dire financial situation at the college.[127] It does not dispute, among other things, that its Fiscal Year 2014 and Fiscal Year 2015 audited financial statements showed a drop in unrestricted assets;[128] that enrollment for the 2015-2016 school year was 34% less than budgeted;[129] that both the unaudited Fiscal Year 2016 financial statements submitted to the Appeals Committee, and the audited Fiscal Year 2016 statements, showed approximately $1.4 million in student accounts receivables;[130] that the unaudited financial statements submitted to the Appeals Committee showed an increase in borrowing on Paine's line of credit;[131] and that Paine's operating net assets in Fiscal Year 2016 remained

---

[125]    *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 174 (4th Cir. 2015) (quoting *Almy v. Sebelius*, 679 F.3d 297, 301 (4th Cir. 2012)).

[126]    *See St. Andrews*, 679 F. Supp. 2d at 1334 ("SACS has presented ample evidence supporting its decision that St. Andrews had longstanding financial problems and shortcomings.").

[127]    *See* Def.'s Statement of Material Facts ¶¶ 123-39.

[128]    *Id.* ¶¶ 125-26.

[129]    *Id.* ¶ 127.

[130]    *Id.* ¶¶ 129-30.

[131]    *Id.* ¶ 132.

below the operating net assets in Fiscal Year 2012.[132] This evidence, along with a number of other facts that Paine does not dispute, allowed the Appeals Committee to reasonably conclude that Paine's removal should be upheld due to financial issues. Furthermore, the Southern Association's interpretation of its financial requirements is entitled to deference.[133] Thus, its conclusion that the evidence presented established a violation of the Principles concerning financial stability is entitled to deference. For these reasons, the Court concludes that the Southern Association's decision is supported by substantial evidence.

Paine argues that a dispute of fact exists because a comparison of the unaudited June 30, 2016 financial statements reviewed by the Appeals Committee and the June 30, 2015 financial statements reviewed by the C&R Committee shows significant improvements in Paine's financial condition.[134] Thus, according to Paine, a dispute of fact exists as to whether the Appeals Committee's decision was based upon substantial evidence. However, under the limited scope of review employed in these cases, the Court does not ask whether

---

[132]     *Id.* ¶ 136.

[133]     *See St. Andrews*, 679. F. Supp. 2d at 1334.

[134]     Paine also argues that "the internal appeals process . . . was chalked with so many improprieties that significant questions exist about whether the result was fair." Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 18. However, this argument addresses a separate question – whether the Southern Association's decision was arbitrary and unreasonable due to a departure from its own rules and procedures. That question is addressed below. This argument has no bearing on whether the Southern Association's decision is supported by substantial evidence.

there is any evidence that would have allowed the Appeals Committee to come to a different conclusion, as Paine suggests. Instead, the Court must ask whether there is enough evidence upon which a reasonable mind could have come to the conclusion that the Appeals Committee did, even if another conclusion would also have been reasonable. While there may have been conflicting evidence as to Paine's financial condition, there is no dispute that sufficient evidence existed supporting the committee's decision. The evidence presented to the Appeals Committee would allow a reasonable mind to conclude that Paine should be removed due to issues with its financial stability. While Paine may disagree with the Southern Association's ultimate conclusion from this evidence, it cannot show that this conclusion was unreasonable. Therefore, the Court concludes that the Appeals Committee's decision was based upon substantial evidence.

### 3. The Southern Association's Adherence to Rules and Procedures

Next, the parties each move for summary judgment as to Paine's claim in Count I. There, Paine alleges that the Southern Association violated its common law due process rights by failing to provide a fair adjudicative process and failing to adhere to its rules and procedures. The Southern Association moves for summary judgment as to this claim and argues that it gave Paine a full and fair opportunity over the course of four years to demonstrate its adherence to the Principles. Paine also moves for summary judgment as to this claim, arguing

that it has shown that the Southern Association violated its common law due process rights as a matter of law. The Court addresses each of the parties' specific arguments in turn.

### i. Administrative Record

Paine first argues that the Southern Association failed to follow its procedures by not producing documents to Paine that the Appeals Procedures required to be produced before the appeals hearing.[135] The Appeals Procedures require the Southern Association to provide certain documents, referred to as the "administrative record," to an institution before an appeals hearing. Specifically, the Appeals Procedures provide that:

> At least 30 days before the date of the appeals hearing, [Southern Association] must submit to the institution and the appeals hearing Officer documents (administrative record) used by the [Southern Association] Board leading to and arriving at the decision regarding the institution. The administrative record includes the following: (1) minutes of the Committee on Compliance and Reports as pertain exclusively to the institutional case, (2) minutes of the Executive Council as pertain exclusively to the institutional case, (3) a historical summary of the Commission actions involving the institution, (4) a transcript of the meeting on the record conducted by the Committee on Compliance and Reports prior to the decision of the Board to take adverse action, (5) official Commission correspondence leading to the adverse action and also related to the appeal, (6) all case materials forwarded to the Committee on Compliance and Reports and used as a basis for the recommendation of an adverse action, and (7) other documents bearing on the substance of the appeal.[136]

---

[135]    Pl.'s Mot. for Partial Summ. J., at 10.

[136]    Appeals Procedures § IV(E) [Doc. 73-1 at 103].

Paine argues that the Southern Association failed to adhere to these procedures because it did not submit to Paine minutes from the Executive Council meetings from 2012 through 2015 (the years that the Southern Association placed Paine on Warning and Probation), nor 2016 (the year that Paine was removed).[137] Paine also argues that the Southern Association violated this provision by not providing Paine with analyses created by the Southern Association's staff "which were crucial evidence of how Southern Association viewed Paine's financial statement audits, influenced the 2016 Special Committee's report and served as the basis of Southern Association's staff memorandum to the C&R committee . . . ."[138]

The Southern Association responds that it did, in fact, provide the full administrative record, and that it should be entitled to summary judgment on this question.[139] The Appeals Procedures only require that the administrative record include Executive Council minutes "as pertain exclusively to the institutional case."[140] According to the Southern Association, in general it does not interpret this provision to include all minutes from the years in question in the administrative record, and such an interpretation is entitled to deference.

---

[137]    Pl.'s Mot. for Partial Summ. J., at 11.

[138]    *Id.*

[139]    Def.'s Mot. for Summ. J., at 16; Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 11-13.

[140]    Appeals Procedures § IV(E).

However, like the courts in *Hiwassee College* and *St. Andrews*, the Court need not reach this issue because Paine also fails to explain how it was prejudiced by the omission of these minutes from the administrative record. To sustain a common law due process claim, Paine must show that its rights were actually violated by the omission of these documents.[141] Paine has not presented any evidence that the omission of these documents from the administrative record affected the outcome of the appeal. The courts in *Hiwassee* and *St. Andrews* came to the same conclusion regarding this argument.[142] Paine admits that it received the same information in its correspondence with the Southern Association that transmitted the results of the Board votes in 2012 to 2016.[143] Since Paine fails to articulate how it was prejudiced by the omission of these minutes in both its Motion for Partial Summary Judgment and its Response to the Defendant's Motion for Summary Judgment, this argument fails.

---

[141]  *See Hiwassee College*, 2007 WL 433098, at *13.

[142]  *See St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, 679 F. Supp. 2d 1320, 1334 (N.D. Ga. 2009) ("The Court, like the court in *Hiwassee I*, does not need to reach this issue because St. Andrews does not present any evidence to show that the failure to include these documents in the Administrative Record did or would have affected SACS' decision."); *Hiwassee College*, 2007 WL 433098, at *13 ("Even if the court considers that the minutes and the reports should have been included in the Administrative Record, Hiwassee has failed to demonstrate how its due process rights were violated by their omission.").

[143]  Pl.'s Response to Def.'s Statement of Material Facts ¶¶ 101-02.

Paine also argues that the Southern Association violated this provision of the Appeals Procedures by omitting the "Barrett Analysis" from the administrative record.[144] However, Paine fails to explain why the Barrett Analysis should have been included in the administrative record. Paine has not explained why the Barrett Analysis should be included in one of the categories of documents constituting the administrative record listed in the Appeals Procedures. Furthermore, it is undisputed that the Southern Association staff created this document, and Paine has provided no evidence that any individual involved in the decisionmaking process in Paine's case – members of the C&R Committee, Executive Council, Board of Trustees, or Appeals Committee – ever viewed this document. Thus, it is unclear how this document had bearing on the substance of Paine's appeal. Paine argues that the Barrett Analysis was important because it "served as the basis" of the Southern Association staff's memorandum to the C&R Committee, which Paine refers to as the "Hoefer Memorandum."[145] However, the Hoefer Memorandum itself was included in the administrative record, which shows there was no reason to include the Barrett Analysis itself. Finally, Paine fails to explain how the omission of the Barrett

---

[144]     Pl.'s Mot. for Partial Summ. J., at 11.

[145]     *Id.*

Analysis from the administrative record adversely affected its appeal.[146] Therefore, this claim fails as a matter of law.

### ii. Conflicts of Interest

Next, Paine argues that the Southern Association violated its due process rights due to its selection of persons with conflicts of interest for the Appeals Committee.[147] The Appeals Procedures provide that "[a] member of the Appeals Committee shall recuse him/herself from that appeals hearing if there is a conflict of interest or an appearance of a conflict of interest."[148] They further provide that:

> Conflict of interest, or the appearance of conflict of interest, as applied to members of the Appeals Committee exists if the Committee member (1) is employed within a state where the parent campus of the institution is located, (2) has voted on the accreditation status of the institution–either during the SACSCOC Board meeting or the meetings of the Committees on Compliance and Reports–at any time leading to the appealable decision, or (3) has served as a member of the site team which visited the institution and resulted in a committee report at any time leading to the appealable decision.[149]

A conflict of interest also exists if the Committee member "has a close personal or familial relationship with persons at the institution or a strong bias regarding

---

[146]     *St. Andrews*, 679 F. Supp. 2d at 1333-34.

[147]     Pl.'s Mot. for Partial Summ. J., at 12.

[148]     Appeals Procedures § II(A).

[149]     *Id.*

the institution."[150] Paine argues that a conflict of interest existed as to Dr. William T. Luckey, Jr., who served on the Appeals Committee for the Paine decision. According to Paine, the selection of Luckey created a conflict of interest because: (1) he served on the Board of Trustees of the Southern Association and the Executive Council when those bodies voted to place Paine on Warning status in 2012 and 2013; (2) Luckey had a "close personal relationship" with Paine's former president, Dr. George Bradley, whose past actions were criticized in Paine's brief; and (3) Luckey's institution, Lindsey Wilson College, assisted Paine in establishing a football program, a decision which Paine blamed for its financial problems in its brief to the Appeals Committee.[151] Therefore, according to Paine, Luckey could not fairly judge the case, which created a fundamentally unfair appeals process for Paine.

Paine first argues that Luckey's selection created a conflict of interest because he had previously served on the Board of Trustees and Executive Council when they voted to place Paine on Warning.[152] The Appeals Procedures provide that a conflict of interest exists if a committee member "has voted on the accreditation status of the institution–either during the SACSCOC Board meeting or the meetings of the Committees on Compliance and Reports–at any

---

[150]     *Id.*

[151]     Pl.'s Mot. for Partial Summ. J., at 12-13.

[152]     *Id.* at 12-13.

time leading to the appealable decision."[153] According to Paine, Luckey's service created a conflict of interest under this provision of the Appeals Procedures due to this prior service.

It is undisputed that Luckey served on the Board of Trustees and Executive Council when those bodies voted to place Paine on Warning in 2012 and 2013.[154] Instead, the parties disagree as to whether this can be considered voting on the accreditation status of the institution "at any time leading to the appealable decision." According to Paine, these votes to put Paine on warning status were part of the process leading to the ultimate decision to remove Paine from membership. The Southern Association argues, in contrast, that it does not interpret these votes as "leading to the appealable decision," and that Paine cannot substitute its own view of the rules for that of the Southern Association.[155] Instead, the Southern Association contends that this rule defines a conflict in this context to exist "only when an Appeals Committee member served on a C&R Committee evaluating the institution or voted to revoke the institution's accreditation," neither of which Luckey did.[156]

---

[153]     Appeals Procedures § II(A).

[154]     Pl.'s Statement of Material Facts ¶ 106. Instead, the Southern Association only disputes whether these facts are material.

[155]     Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 13.

[156]     *Id.*

The Court agrees with Paine that Luckey's service on the Appeals Committee may present a conflict of interest. The Southern Association's interpretation is not entitled to deference because it conflicts with the terms of the Appeals Procedures. The Appeals Procedures provide that a conflict exists when a member has voted on the accreditation status of the institution, either during the Board Meeting or C&R Committee meeting, at *any time* leading to the appealable decision. Thus, the rule does not limit a conflict to a C&R Committee evaluation or voting to revoke accreditation, as the Southern Association contends. In *Hiwassee College*, the institution made a similar argument concerning a committee member who had served on previous C&R Committees that reviewed the institution.[157] The Southern Association argued there that the committee member did not have a conflict because he did not vote on the accreditation status of the institution during the Board meeting or C&R Committee meeting which dealt with the issue of removing it from membership.[158] The court found that the institution raised a "colorable claim." The reason that the institution was being removed from membership was because it had exhausted its "supervision" options, and the earlier decisions were "arguably part of that process."[159] Likewise, Luckey served on the Board

---

[157]     *Hiwassee College, Inc. v. S. Ass'n of Colls. & Schs.*, No. 1:05-CV-0951-JOF, 2007 WL 433098, at *13-14 (N.D. Ga. Feb. 5, 2007).

[158]     *Id.* at *13.

[159]     *Id.* at *14.

of Trustees when it voted to place Paine on warning status. This was arguably part of the process leading to the removal of Paine from membership. Thus, Paine has raised a colorable claim concerning a conflict of interest.

Nonetheless, the Court also concludes that Paine has failed to show that this conflict caused it injury. In *St. Andrews Presbyterian College*, the court noted that "while there are conflicting claims whether Dr. Laws had a conflict of interest, St. Andrews has failed to show that the alleged conflict caused it any injury or otherwise affect the accreditation process."[160] Similarly, in *Hiwassee College*, the court found that, even though a conflict of interest existed with one of the Appeals Committee members, "Hiwassee has brought forward no evidence to show that Dr. Goodson's conflict permeated the entire six-member appeals committee which rendered a unanimous decision as to Hiwassee's accreditation status."[161] The court further noted that granting Hiwassee the remedy it sought "would provide a windfall to Hiwassee in vitiating the procedure SACS has in place to address potential accreditation deficiencies where there is no evidence in the record to indicate that Dr. Goodson's presence on the Appeals Committee affected in any way the fundamental fairness of the process afforded to

---

[160] *St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, 679 F. Supp. 2d 1320, 1333 (N.D. Ga. 2009).

[161] *Hiwassee College, Inc. v. S. Ass'n of Colls. & Schs., Inc.*, 490 F. Supp. 2d 1348, 1351 (N.D. Ga. 2007).

Hiwassee to challenge SACS's accreditation decision."[162] Likewise, Paine has not shown how Luckey's service on the Appeals Committee, even if there was a conflict of interest under the terms of the Appeals Procedures, has caused it any injury or affected the accreditation process. Paine has made no viable argument that Luckey's presence altered the fundamental fairness of the appeals process. There is no evidence that Luckey's conflict "permeated" the entire Appeals Committee, which unanimously voted to remove Paine's membership. Without any evidence showing an injury, Paine's claim for conflict of interest fails as a matter of law.

Next, Paine alleges that a conflict of interest existed due to a personal relationship between Luckey and Paine's former president Dr. Bradley.[163] According to Paine, Luckey and Bradley had a "close personal relationship," and that this relationship created a conflict because Paine heavily criticized the actions of Bradley in its brief to the Appeals Committee.[164] The Appeals Procedures provide that a conflict of interest, or an appearance of a conflict of interest, exists if, among other things, an Appeals Committee member "has a close personal or familial relationship with persons at the institution or a strong

---

[162]    *Id.* at 1351-52.

[163]    Pl.'s Mot. for Partial Summ. J., at 13.

[164]    *Id.*

bias regarding the institution."[165] Paine argues that a close personal relationship existed because Bradley invited Luckey and his wife to attend the Masters Golf Tournament as his guest, and allowed them to stay at his home.[166] Paine further argues that Luckey invited Bradley and his wife to visit his beach house in Florida after Bradley left Paine.[167]

The Court concludes that these facts are insufficient to show that a conflict of interest existed. "A speculative possibility that the accrediting body acted not because it was persuaded by the evidence, but for some improper reason, fails to overcome the strong presumption of regularity."[168] Paine's allegations amount to little more than speculation that Luckey acted due to improper personal reasons, as opposed to relying upon the evidence presented, in voting to uphold the decision to remove Paine from accreditation. Luckey and Bradley most likely did not have the type of close relationship necessary to create a conflict of interest. Bradley had already departed from Paine by the time of the appeal, and the facts alleged do not necessarily establish that the two had a close, personal relationship. Even more importantly, however, Paine

---

[165]    Appeals Procedures § II(A).

[166]    Pl.'s Mot. for Partial Summ. J., at 13.

[167]    *Id.*

[168]    *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 39 F. Supp. 2d 889, 897 (W.D. Mich. 1998) (internal alterations and citations omitted).

has failed to show that this alleged conflict of interest caused it any injury or otherwise impacted the accreditation process.[169] Even if this relationship did present a conflict of interest, Paine has failed to show that this conflict resulted in a fundamentally unfair appeals process or otherwise caused it any prejudice, as explained above. Therefore, this argument fails.

Finally, Paine argues that a conflict existed as to Luckey because his institution, Lindsey Wilson College, assisted Bradley's administration in establishing Paine's football program, which Paine cited during the appeals process as a major factor in Paine's financial problems.[170] However, the Court finds that this argument presents little more than conjecture as to bias on Luckey's part. Paine has presented no evidence that Luckey was persuaded to vote against Paine due to personal animus or bias, as opposed to basing his decision upon the evidence. Furthermore, the Court finds it highly unlikely that Luckey would have harbored bias or personal animus against Paine because it blamed the creation of its football program for contributing to its financial problems. At most, this constitutes speculation. Given the presumption of regularity that the Southern Association is entitled to on this issue, the Court

---

[169]     *St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, 679 F. Supp. 2d 1320, 1333 (N.D. Ga. 2009) ("The Court finds that while there are conflicting claims whether Dr. Laws had a conflict of interest, St. Andrews has failed to show that the alleged conflict caused it any injury or otherwise affect the accreditation process.").

[170]     Pl.'s Mot. for Partial Summ. J., at 13-14.

finds that Paine has not established that a conflict existed. Furthermore, as discussed above, even if this did present a conflict of interest, Paine has not established that Luckey's conflict caused it any injury. Therefore, this claim fails as a matter of law.

### iii. Non-Elected Appeals Committee Members

Next, Paine argues that the Southern Association violated its procedures when "Luthman improperly appointed two non-elected, cherry-picked individuals to the Paine Appeals Committee."[171] The Appeals Procedures provide that the Appeals Committee shall consist of 12 persons elected by the College Delegate Assembly and who have served on the Board of Trustees.[172] The procedures further provide that the Appeals Committee should be made up of eight chief executive officers, two faculty/academic personnel, and two public members.[173] A minimum of five members of the Appeals Committee constitutes a quorum, and a decision is made by a majority vote.[174] Importantly, the Chair of the Board of Trustees fills vacancies on the Appeals Committee "which occur during terms of office when it is necessary to obtain a quorum."[175]

---

[171]    Pl.'s Mot. for Partial Summ. J., at 14.

[172]    Appeals Procedures § II(A).

[173]    *Id.*

[174]    *Id.*

[175]    *Id.*

Here, Paine contends that the Southern Association violated this provision of the Appeals Procedures by allowing Luthman to improperly appoint two non-elected individuals to the Appeals Committee.[176] According to Paine, Luthman "cherry-picked" Dr. Harold T. Martin and Dr. W. Blaine Early to serve on the Appeals Committee, even though she did not know yet whether or not there would be a quorum.[177] However, Paine has failed to provide evidence supporting such an allegation. Nothing in the record indicates that Luthman herself chose the two individuals to be appointed to the Appeals Committee. Instead, the only evidence offered shows that Dr. Keenum, the Chair of the Board, appointed these two individuals to establish a quorum, as the Appeals Procedures require. In her deposition, Luthman testified that Early and Martin were appointed to the Appeals Committee by the Chair, Keenum, to create a quorum.[178] Paine provides no evidence disputing Luthman's testimony. Instead, Paine argues that there is "no credible evidence" that Dr. Keenum actually made the appointment of these members to fill a quorum instead of Luthman.[179] However, Paine bears the burden of proving that the Southern Association violated its due process rights. It must provide evidence that the Southern

---

[176]    Pl.'s Mot. for Partial Summ. J., at 14.

[177]    *Id.* at 14-15.

[178]    Luthman Dep. at 172-73.

[179]    Pl.'s Statement of Material Facts ¶ 91.

Association appointed Appeals Committee members in a manner that violates the Appeals Procedures, and that this violation resulted in prejudice. Paine does not meet this burden. Luthman testified that Keenum, and not her, selected the members for the Appeals Committee to establish a quroum.[180] Paine has not produced any evidence to the contrary. Since there is no evidence in the record showing that the selection of Martin and Early was done in a manner that violated the Appeals Procedures, this argument fails.

Furthermore, Paine has not shown that the selection of Martin and Early caused it any injury, even if Luthman did improperly choose them in violation of the Appeals Procedures. In *St. Andrews*, the plaintiff argued that the Hearing Officer in its appeal was improperly elected in violation of the Appeals Procedures. The court rejected this argument, and noted that the college had "not presented any evidence . . . that his service as a hearing officer caused Plaintiff any injury."[181] Likewise, Paine has not shown that the appointment of Martin and Early, even if improper, had any effect on the outcome of the appeal.

---

[180] Paine also focuses on Luthman's testimony concerning her email communications with Keenum's assistant memorializing the selection of Early and Martin to the Board, which were not located during discovery. *See* Pl.'s Statement of Material Facts ¶ 91. However, the absence of this evidence does not prove that Luthman, as opposed to Keenum, selected Martin and Early for the committee. Since Paine bears the burden of proof on its claim, it must provide evidence showing that Luthman made these selections in violation of the Appeals Procedures. The absence of these emails from the record does not satisfy this burden.

[181] *St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, 679 F. Supp. 2d 1320, 1334 (N.D. Ga. 2009).

Paine makes three arguments for why Martin and Early's appointment affected the outcome. First, it argues that, without Martin and Early, there would not have been a quorum.[182] However, this argument is circular. The reason Martin and Early were appointed was because there was no quorum. The Appeals Procedures require the Chair of the Board to fill vacancies to establish a quorum. This could not be prejudicial. Paine next argues that Luthman intentionally recommended Martin and Early because they would be a resource on financial and accounting issues.[183] However, the fact that Early and Martin may have had financial backgrounds does not establish that Paine was injured by their selection to the committee. Finally, Paine argues that Early "insisted" on adding a line to the Appeals Committee decision stating that even if the audited financial information had been considered, it would not have changed the committee's decision.[184] However, in his deposition, Early merely stated that he advocated including a sentence in their decision letter stating that, even if the audited statements had been considered, it would not have changed their decision.[185] This only shows that Early *advocated* including the reasoning in the letter. It does not show that he was singlehandedly behind the committee's

---

[182]    Pl.'s Reply Br., at 14.

[183]    *Id.*

[184]    *Id.*

[185]    Early Dep. at 108-09.

finding that the audited financial statements would not have made a difference, even if considered. Therefore, the Southern Association is entitled to summary judgment as to this issue.

### iv. Exclusion of Evidence and Failure to Follow Deadlines

Next, Paine argues that the Southern Association violated the Appeals Procedures by excluding Paine's audited Fiscal Year 2016 financial statements from the evidence considered during the appeal.[186] Both parties move for summary judgment as to this issue.[187] The Southern Association set a deadline of August 8, 2016 for Paine to submit its brief. However, the audit of Paine's financial statements for Fiscal Year 2016 was not yet complete by this time, and Paine instead attached its unaudited financial statements for that year to its brief and stated that it would supplement the brief with the audited statements. On August 12, 2016, Cynthia Escamilla, the Hearing Officer, granted the Southern Association's request and ruled that Paine could not supplement its brief with the audited financial statements.[188] Paine now argues that the exclusion of this evidence violated the Southern Association's rules. However, it does not identify a particular rule that Escamilla's ruling violated. In fact, the Appeals Procedures state that the Hearing Officer is "responsible for ruling on

---

[186]  Pl.'s Mot. for Partial Summ. J., at 16.

[187]  *See id.* at 16-17; Def.'s Mot. for Summ. J., at 15.

[188]  Pl.'s Statement of Material Facts ¶ 117.

all procedural questions" prior to, during, and following the hearing and that she "presides over the hearing, including . . . ruling on the admissibility of evidence."[189] Thus, the Court concludes that Paine has not satisfied its burden in showing that this decision violated the Appeals Procedures.

And, even if the exclusion of these audited financial statements did violate the Appeals Procedures, Paine has again failed to show that such a violation caused it injury. Paine's audited Fiscal Year 2016 financial statements were largely identical to the unaudited Fiscal Year 2016 financial statements that Paine submitted to the Appeals Committee.[190] During the appeals hearing, Paine's counsel admitted to the Appeals Committee that the audited financial statements did not differ from the unaudited statements that were submitted.[191] And, notwithstanding the rule that it only consider verifiable new financial information, the Appeals Committee found that, even if the unaudited financial statements for Fiscal Year 2016 had been verifiable, they still would not provide material information that demonstrated financial stability.[192] Paine does not dispute these facts.[193] Thus, even if Paine had been able to submit the audited

---

[189]    Appeals Procedures § III(B)(4).

[190]    Def.'s Statement of Material Facts ¶ 146.

[191]    *Id.* ¶ 147.

[192]    *Id.* ¶ 148.

[193]    In its reply brief, Paine contends that the Southern Association's counsel urged the Appeals Committee during the hearing to disregard the

financial statements, this would not have changed the Appeals Committee's

ultimate decision. Therefore, since Paine has failed to show that the exclusion

of this evidence caused it any harm, this argument lacks merit.[194]

---

unaudited financial statements, and that the Appeals Committee did in fact disregard this evidence. Pl.'s Reply Br., at 13. However, Paine's Statement of Material Facts does not support this argument. There, Paine contends that the Southern Association's counsel argued that the unaudited financial statements could not be relied upon. Pl.'s Statement of Material Facts ¶ 150. It then asserted that Escamilla, the Hearing Officer, refused to reconsider her decision to exclude the audited statements. *Id.* ¶¶ 151-52. Paine then contends that the Southern Association's counsel argued that the audited statements were not in front of the committee, but even if they were, they would not change the result of the appeal. *Id.* ¶ 153. However, these facts, even if true, do not dispute the fact that the Appeals Committee assumed that the unaudited financial statements were verifiable, and still concluded that Paine should be removed from membership. Paine has conceded this fact. Therefore, even if the Southern Association's counsel highlighted the absence of the audited statements, this did not prejudice Paine.

[194]     In its Brief as *Amicus Curiae* in Support of Paine's Motion for Partial Summary Judgment [Doc. 103], the United Negro College Fund ("UNCF") emphasizes the purportedly harsh and disparate impact that certain Department of Education policies had on historically black colleges and universities, such as Paine, from 2011 to 2014. *See* [Doc. 103] at 6-10. UNCF argues that, in light of these "extenuating and temporary circumstances," the failure of the Appeals Committee to consider Paine's audited financial statements "compounded" the arbitrary and unreasonable nature of the Southern Association's decision. *Id.* at 14. However, the Court's review is limited. The Court cannot second guess the weight that the Southern Association put on different criteria, such as the impact of federal policy, in deciding that Paine was not in compliance with the financial requirements of the Principles. Instead, the Court can only consider whether the Southern Association's decision was arbitrary and unreasonable or an abuse of discretion, and whether the decision was based on substantial evidence. As discussed above, the Hearing Officer's decision to exclude the Fiscal Year 2016 audited financial statements did not contravene the Appeals Procedures, and even if it did, such an error did not constitute a due process violation because the Appeals Committee nonetheless concluded that such information would not have changed its ultimate decision. Therefore, even despite the blame that these

Paine also argues that the Southern Association "incorrectly told Paine that its brief was due on August 8, 2016, more than a month prior to the September 12, 2016 appeals hearing."[195] According to Paine, this prejudiced it because the audit of its financial statements was not yet completed by this point.[196] However, the Court similarly finds this argument unpersuasive. First, the deadline imposed by the Southern Association was reasonable. The Appeals Procedures provide that an institution must submit its brief "[a]t least 14 days before the date of the appeals hearing."[197] However, the Appeals Procedures also state that an appeals hearing for an action taken in June, such as this action, shall occur on the Monday, Tuesday, or Wednesday of the third week of August.[198] Thus, the hearing should have taken place between August 15-17, 2016, with the brief being due two weeks before that date. However, Paine requested that the appeals hearing be postponed until September 12, 2016, and the Southern Association granted this request.[199] Paine did not request an extension of the briefing deadline, but the Southern Association nonetheless

---

Department of Education policies may deserve for Paine's trouble, Paine has not established the necessary elements of a common law due process claim.

[195]    Pl.'s Mot. for Partial Summ. J., at 16-17.

[196]    *Id.* at 19.

[197]    Appeals Procedures § IV(E).

[198]    *Id.* § IV(D).

[199]    Def.'s Statement of Material Facts ¶ 104.

extended the deadline to August 8.[200] The Court finds that it was reasonable for the Southern Association to postpone the appeals hearing without extending the deadline for submission of Paine's brief. The twenty-five day period that Paine had to submit its brief after receiving the administrative record was longer than almost all institutions receive to file an appeals brief. Nothing in the rules requires the briefing deadline to be extended if an appeals hearing is continued. Furthermore, had the Southern Association not granted postponement of the hearing, Paine's brief would have been due, at the latest, in the first week of August. Just because the Southern Association decided to move the hearing date, at Paine's request, does not mean that it should also get a longer period of time to submit a brief. Nothing in the Appeals Procedures prohibits the Southern Association from continuing the date of an appeals hearing while maintaining the same schedule for briefing. Since this interpretation of the rules is reasonable, the Court defers to the Southern Association's interpretation of its own rules.

Furthermore, even if the Southern Association did violate the Appeals Procedures by requiring submission of Paine's brief on August 8, 2016, Paine cannot show that this violation injured Paine. As noted above, the Appeals Committee concluded that even if it did consider the audited financial statements, those documents would not have altered its ultimate decision

---

[200] *Id.* ¶ 105.

concerning Paine's appeal. Therefore, even if the Southern Association had allowed Paine to submit a brief at a later point in time that included the audited financial statements, this would not have affected the outcome of its appeal. For this reason, the Court finds this argument similarly unavailing.

### v. Ex Parte Communications

Next, Paine argues that the Southern Association violated the Appeals Procedures by allowing repeated, "secret" *ex parte* contacts between Carol Luthman and members of the Appeals Committee.[201] Paine asserts that Luthman engaged in a number of *ex parte* contacts with the Hearing Officer, members of the Appeals Committee, and the Southern Association's attorney, including: (1) *ex parte* emails with the Hearing Officer concerning responding to an email from an attorney for Paine, (2) an *ex parte* conference call with the Chair of the Appeals Committee about an appeals handbook, and (3) a meeting with the Hearing Officer and Chair of the Appeals Committee in the hotel restaurant on the evening of September 11, 2016, the night before the hearing.[202] According to Paine, this violated its due process rights and "taint[ed] the appeal process."[203]

---

[201]    Pl.'s Mot. for Partial Summ. J., at 17-19.

[202]    *Id.* at 18-19. Additionally, Paine contends that Luthman participated in a meeting with the Southern Association's attorney, Mr. McKee, and the Southern Association's witnesses immediately prior to meeting with Martin and Escamilla at the hotel restaurant. *See id.* at 19.

[203]    *Id.*

However, these contacts were not improper under the Southern Association's rules and procedures. Nothing in the Appeals Procedures precludes the day-to-day operations staff of the Southern Association, such as Luthman, from assisting in the logistics of the appeals process and being in contact with the members of the Appeals Committee. In fact, concluding otherwise would make the appeals process unworkable. Luthman testified in her deposition that the Southern Association appeals are very "episodic" and that a hearing officer or member of the Appeals Committee may only experience one or two appeals during their service.[204] Due to this inexperience, Luthman often communicated with the Hearing Officer and Appeals Committee Chair concerning the process.[205] Otherwise, the Hearing Officer and Chair would lack guidance in the logistics of the appeal.

In fact, Luthman testified that the Southern Association changed the Appeals Procedures in the 1990s because, in the past, the Southern Association's legal counsel worked with the Hearing Officer and Appeals Committee on the logistics of the appeals while also representing the Southern Association in the same appeal, which she considered to be "unfair."[206] She further testified that the current rules allow the Southern Association and the institution to each

---

[204] Luthman Dep. at 61-62.

[205] *Id.*

[206] *Id.* at 61.

have their own legal representation, while the individual in her position worked

with the administration to ensure the logistics and processes worked out.[207] It

is not improper under the rules for the Southern Association staff member

organizing an appeal to have pre-hearing contacts with the Hearing Officer and

Chair of the Appeals Committee. Other courts have similarly concluded that it

is appropriate for the staff of an accreditation organization to work with an

appeals committee on procedural issues.[208]

Furthermore, "these allegations do not even hint at the existence of

prejudicial error that would be needed to justify relief."[209] Paine has provided no

evidence that these contacts had an effect on any of the decisionmakers on the

Appeals Committee. Even if the contacts were improper, which they were not,

Paine was not prejudiced by them. "A mistake that has no bearing on the

ultimate decision or causes no prejudice shall not be the basis for reversing an

agency's determination."[210] Paine has failed to produce evidence that any of the

members of the Appeals Committee, including Escamilla, the Hearing Officer,

and Martin, the Chair, were biased as a result of contacts with Luthman, even

---

[207]     *Id.* at 62.

[208]     *Med. Inst. of Minn. v. Nat'l Ass'n of Trade and Tech. Schs.*, 817 F.2d 1310, 1314 (8th Cir. 1987).

[209]     *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 716 (6th Cir. 2006) (internal quotations omitted).

[210]     *Id.* (internal quotations and alterations omitted).

assuming those contacts were improper.[211] Nothing in the record indicates that Luthman's discussions had an adverse effect on Paine's appeal, that Luthman discussed the merits of the appeal, or that Luthman was biased against Paine. In fact, in each of these alleged *ex parte* contacts, Luthman was merely discussing the procedural aspects of conducting an appeal such as this, a role which Luthman indicates is entirely necessary for an effective and efficient appeals process to occur. Therefore, the Court finds this unpersuasive.

### vi. Wrong standard

Next, Paine argues that the Southern Association violated its own procedures by instructing the Appeals Committee to apply the wrong standard for remanding the case back to the C&R Committee.[212] The Appeals Procedures provide that an institution removed from accreditation for financial reasons may gain a remand "if it presents new and verifiable financial information that has become available since the adverse action was taken and that is material to the reason for the Board's decision."[213] Paine asserts that the Hearing Officer instructed the Appeals Committee that the standard was whether Paine had

---

[211]    *See Med. Inst. of Minn.*, 817 F.2d at 1314 ("MIM's improper 'prepping' argument is without merit because MIM has produced no evidence that the appeals panel was biased by any discussions it may have had with NATTS' counsel.").

[212]    Pl.'s Mot. for Partial Summ. J., at 19.

[213]    Appeals Procedures § V(B)(2).

presented verified evidence in the form of an audit.[214] According to Paine, this was incorrect because the Appeals Procedures instruct that a case should be remanded if the institution presents new, material financial information that is *capable of being verified*, not information that is verified.[215] The Southern Association argues in response that "verifiable" financial information means information that is capable of being verified by the Appeals Committee *at the time of submission*.[216] It also argues that its interpretation is reasonable and entitled to deference.[217]

The Court agrees that the Southern Association's interpretation is reasonable and entitled to deference. The "[Southern Association's] interpretation of its requirements for financial stability and a sound financial base is entitled to deference."[218] The Court agrees that it is reasonable for the Southern Association to interpret the term "verifiable" to mean capable of being verified by the committee at the time of submission. In fact, it is more

---

[214]     Pl.'s Mot. for Partial Summ. J., at 20.

[215]     *Id.* at 19.

[216]     Def.'s Br. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 22.

[217]     *Id.*

[218]     *St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Schs., Inc.*, 679 F. Supp. 2d 1320, 1334 (N.D. Ga. 2009); *see also Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 714 (6th Cir. 2006) ("While Cooley's proposed interpretation of Rule 13 is perhaps plausible, the ABA's reading is not clearly erroneous and in fact is more logical.").

reasonable than Paine's purported standard. Paine's interpretation is erroneous because almost any information could be considered "capable of being verified." Thus, the phrase "verifiable" would become meaningless as a standard. Paine argues that an accreditation organization's interpretation of its own regulations, like an administrative agency's, is not entitled to deference if it is plainly erroneous or inconsistent with the regulation.[219] However, Paine has not shown that the Southern Association's interpretation is plainly erroneous. In fact, the Southern Association's interpretation is more reasonable than Paine's proffered interpretation. Therefore, the Southern Association's interpretation of this standard is entitled to deference.

And, even if the Appeals Committee did articulate the incorrect standard, Paine has failed to show that this had an adverse impact on the appeal. As discussed above, Paine admits that the unaudited and audited financial statements for Fiscal Year 2016 are largely identical. The Appeals Committee, when deliberating over this case, decided that even if the unaudited financial statements *were verified*, its ultimate decision would not have changed because this information would not have demonstrated a material change in Paine's financial status. Therefore, since Paine has not established that it suffered an injury due to this alleged error, the Southern Association is entitled to summary judgment as to this claim.

---

[219]    Pl.'s Reply Br., at 3.

### vii. Luthman's Role in the Appeal

Finally, Paine argues that Luthman played an improper role in the appeals process, and that this violated the Southern Association's Appeals Procedures.[220] According to Paine, Luthman, who was a Southern Association staff member representing the Southern Association's "organizational interests" and who was "intimately involved in the loss of Paine's accreditation," played an improper and influential role in the appeals process.[221] Paine argues, among other things, that Luthman: was not neutral; that she was involved in the underlying meetings of the Board of Trustees, Executive Council, and C&R Committee; that she demonstrated her "support" for the Southern Association by getting into a verbal dispute outside of the appeals hearing meeting; and that she thanked the Southern Association's witnesses after the appeal for representing the interests of the Southern Association.[222]

However, the Court concludes that Luthman's role in the appeal did not violate Paine's due process rights. First, as discussed above, Luthman's role in preparing the Appeals Committee Chair and Hearing Officer was consistent with prior Southern Association practices and was necessary for an efficient and effective appeals process. Furthermore, as discussed above with regard to *ex*

---

[220]    Pl.'s Mot. for Partial Summ. J., at 20-21.

[221]    *Id.*

[222]    *Id.*

*parte* communications, there was no evidence that the Appeals Committee was biased by any contacts it had with Luthman.[223] In fact, there is no evidence that Luthman discussed anything besides the procedures, rules, and logistics of an appeal. As Luthman explained, this was necessary because the Appeals Committee Chair and Hearing Officer had very little experience with the appeals process.[224] "An administrative decisionmaker is entitled to a presumption of honesty and integrity."[225] "An unfavorable impression of an applicant on the part of the accreditation agency is . . . not bias." Paine has failed to overcome this presumption of honesty and integrity. Paine's accusations of bias or animus on the part of Luthman are not based on evidence and instead constitute conjecture.

---

[223]     *Med. Inst. of Minn. v. Nat'l Ass'n of Trade & Tech. Schs.*, 817 F.2d 1310, 1314 (8th Cir. 1987) ("MIM's improper 'prepping' argument is without merit because MIM has produced no evidence that the appeals panel was biased by any discussions it may have had with NATTS' counsel."). In fact, the Southern Association is in a stronger position here than the organization in *Medical Institute of Minnesota.* In *Medical Institute of Minnesota*, the accrediting agency's legal counsel engaged in preparations with the appeals panel. *See id.* In contrast, Luthman was not the Southern Association's counsel representing it in the appeal, but instead was merely a Southern Association staff member who was handling the logistics of the appeal. In fact, the Southern Association changed its rules in the 1990s to prevent its legal counsel from engaging in this preparation role. Luthman Dep. at 61-62. If prepping by an accreditor's legal counsel does not violate due process, then surely the same prepping by a staff member certainly does not either.

[224]     Luthman Dep. at 61-62.

[225]     *Prof'l Massage Training Ctr. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 178 (4th Cir. 2015).

Paine argues that, while courts normally presume that an administrative agency's decisions are not motivated by bias, Luthman has exhibited "a pattern of biased conduct" or a pattern of conduct that gives rise to a strong inference of bias.[226] However, Paine fails to articulate what exactly this pattern of biased conduct is. Paine points to Luthman's purported *ex parte* preparation sessions with the Hearing Officer and Appeals Committee Chair and Luthman's role in coordinating the appeals process. However, it has not demonstrated any sort of animus or bias against Paine by Luthman. Instead, Paine relies upon mere speculation that Luthman acted in a way that was motivated by bias against it. This is not enough to overcome the Court's presumption that the Southern Association and Luthman acted without bias.

Furthermore, even if Luthman's role in Paine's appeal was improper and did violate the Appeals Procedures, Paine has failed to show that it was prejudiced by this improper role. Paine argues that Luthman "maneuvered behind the scenes to prejudice Paine's chances of prevailing in the appeal" by not providing Paine with the complete administrative record, by having privileged communications with the Southern Association's attorney, by selecting a hearing officer from two potential candidates, and more.[227] However, Paine has not articulated how this impacted the ultimate decision by the Appeals Committee

---

[226]    Pl.'s Reply Br., at 9.

[227]    Pl.'s Mot. for Partial Summ. J., at 21-22.

to uphold the removal decision, and many of these contentions were rejected in the discussion above. Since Paine has failed to show that Luthman's role in the appeal had an actual, adverse impact on the adjudicative process, this claim fails.

### C. Breach of Contract

Finally, both Paine and the Southern Association move for summary judgment as to Paine's breach of contract claim. Paine argues that the Principles, the Southern Association's procedures and policies, and the Appeals Procedures constitute a contract between Paine and the Southern Association because the College Delegate Assembly, including a representative from Paine, approved these policies.[228] According to Paine, the Southern Association breached this "contract," and it is entitled to summary judgment. In contrast, the Southern Association argues that Paine's breach of contract claim is "legally foreclosed" because the Higher Education Act provides exclusive federal jurisdiction for cases involving accreditation decisions.[229] The Court agrees that this breach of contract claim fails as a matter of law.

"Congress did not specify a source of law for these suits, but it is hard to see how state law could govern when federal jurisdiction is *exclusive*."[230] "[I]t is

---

[228]     Pl.'s Mot. for Partial Summ. J., at 24.

[229]     Def.'s Mot. for Summ. J., at 10-11.

[230]     *Chicago School of Automatic Transmissions, Inc. v. Accreditation All. of Career Schs. & Colls.*, 44 F.3d 447, 449 (7th Cir. 1994).

all but impossible to see how federal courts could apply state law to the actions of accrediting agencies when state courts have been silenced by the provision for exclusive jurisdiction."[231]    Indeed, contract law is not a good fit for these disputes. "[A]ccrediting bodies are not engaged in commercial transactions for which state-law contract principles are natural matches."[232] "The 'contract' the School wants to enforce is not a bargained-for exchange but a set of rules developed by an entity with many of the attributes of an administrative agency."[233] Accreditation agencies can also adopt and change their rules unilaterally, showing that these rules are not akin to the terms of a contract. Furthermore, accrediting agencies such as the Southern Association are acting as proxies for the Department of Education, which has delegated this important public function.[234] Because of this, these organizations have many of the attributes of an administrative agency. If a federal agency made these accreditation decisions, there would be no question that the Administrative Procedure Act would govern judicial review, and "the court would inquire whether the agency's decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or reached 'without observance of

---

[231]    *Id.*

[232]    *Id.*

[233]    *Id.*

[234]    *Id.*

procedure required by law.'"[235] Thus, federal administrative law, and not state contract law, provides the best fit for these claims.[236] Because of this, the Court finds that Paine's breach of contract claim fails as a matter of law.[237]

## IV. Conclusion

For the reasons stated above, the Defendant The Southern Association of Colleges and Schools Commission on Colleges, Inc.'s Motion for Summary Judgment [Doc. 70] is GRANTED, and the Plaintiff The Paine College's Motion for Partial Summary Judgment [Doc. 71] is DENIED.

---

[235] *Id.* (quoting 5 U.S.C. § 706(2)(A),(D)).

[236] Additionally, Paine's breach of contract claim would involve essentially the same question as Paine's common law due process claims. Under Paine's breach of contract theory, the question of whether the Southern Association breached its purported contract with the Plaintiff would entail the same analysis of whether it followed its procedures.

[237] Furthermore, in its Brief in Opposition to the Southern Association's Motion for Summary Judgment, Paine argues that the Southern Association's claim for attorneys' fees should be considered preempted if the Court rules that Paine's breach of contract claim is preempted. *See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 21. In Count VI of the Complaint, Paine seeks a declaratory judgment that the Southern Association's fee-shifting provision is unenforceable. However, neither party moves for summary judgment on this issue. Paine does not move for summary judgment as to this issue in its Motion for Partial Summary Judgment, and the Southern Association also does not move for summary judgment as to this issue in its Motion for Summary Judgment. Therefore, the Court declines to address the issue of attorneys' fees.

SO ORDERED, this 11 day of October, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge